Ashburn, J.
This casé was disposed of in the Court of Common Pleas on a general demurrer to the reply to the answer.
The demurrer was treated in that court, and has been *41 .argued here, as a demurrer to the petition. .We will consider it in that light.
On the demurrer being sustained, plaintiff took the case on petition in error to the District Court. By that court the case was reserved for decision in the Supreme Court.
The ruling error assigned is that the Court of Common Pleas erred in sustaining the demurrer.
The question presented on the record is whether the Board of Education of the city of Toledo, as a corporation, is liable in- damages to a scholar, lawfully attending one of the common schools therein, for injuries resulting to such ■scholar, without its negligence, from the alleged negligence of defendant in the construction and maintenance of the ■school building where the scholar,was in rightful attend.ance.
By the demurrer all facts well pleaded are admitted to be true. Not so, conclusions the pleader has drawn from the statutes, as facts. Will the admitted facts sustain an action against defendant?
By article 6 of the State Constitution the state is charged with the duty of providing and maintaining a system of common schools for and throughout the state. In obedience to this constitutional mandate the General Assembly, in 1853, passed an act, “to provide for the reorganization, supervision and maintenance of common schools.” By its command, each and every organized township in the state is made a school district for all purposes connected with the general interests of education in 'the township. The general management and control of the common schools, in each of these political divisions of the state, is confided to a body styled a board of education. The constituent elements composing this board are the township clerk and that director of a sub-district who is appointed clerk of the sub-district. This body, and its successors in office, are declared to be a body politic and corporate in law, with capacity to sue and be sued, •&e. The purpose of this is to give the common school *42 system uniformity, harmony, unity, and force throughout the state.
It is provided in this act, that cities and villages authorized by special acts to elect their own boards of education shall have the exclusive management of their own public-schools. By sec. 67, the Akron school act and amendments, together with all other acts creating or authorizing special school districts, are continued in force. But all such school organizations are parts of the general common school system of the state. The provisions of the statute preserving their autonomy clearly manifests such intention.
The school boards and other officers in all special school-districts are required by sec. 67 to make annual reports, such as are required of township boards and other officers. They reach their respective shares'of the general common school fund only, “on the order of the auditor of the-proper county,” who is expressly forbidden to issue such order, “unless the local treasurer, clerk, recorder or secretary of such board or other school officer” has deposited with the auditor the annual “ abstract of the enumeration of scholars,” &e., “ as required by the act of 1853, of teachers, local directors, and boards of education in townships.”
Keeping in mind that the common schools in the state,, whether located in city, village, or county, are the fruit of the constitution, constituting a general educational system, and providing for the organization, maintenance, and unification of common schools in Ohio, we will examine the-claim of the plaintiff and liability of defendant.
Plaintiff claims substantially that defendant is a corporation, municipal in its character, so created by statute for the benefit of the city of Toledo, presumably at its request, and conferring upon the inhabitants of that city other and greater powers and privileges than upon the inhabitants at large; that it has irower to raise and control the corporate and other school funds raised to carry out and defray the expenses of the common school system of Toledo; and hence responsible in damages for private injury resulting from corporate negligence.
*43 Defendant controverts this claim of Rs power and liability.
The city of Toledo was constituted a separate school ' district by an act passed March 9, 1849 (47 Ohio L., 207), extending the Akron school law to Toledo. The adopting act having some provisions in it inconsistent with the Akron act, to that extent the Akron statute did not apply to Toledo. April 2,1866 (63 Ohio L., 200), an act was passed amending and supplementary to the act of March 9, 1849.. By it, sections 9 and 10, providing for the levy of taxes and their expenditures, were repealed, and supplied by sections one, two, and three of the repealing act. As a distinct provision for taxation was made in the Toledo act of 1866, it necessarily superseded section seven of the Akron act of February 8, 1847, upon the same subject. The two-provisions were inconsistent, and both could not be in force in Toledo.
Section one of the act of April 2, 1866, limits the levy for school houses and sites to one mill on the dollar. Section two limits the annual levy for school purposes to four mills on the dollar. Section three allows an increased levy for the purchase, improvement, or building purposes, when, in the opinion of the board of education, the necessities of the schools under its charge “ require the immediate, enlargement, or purchase, or improvement of a site or sites, or the erection or enlargement of a school-house or schoolhouses, involving a required expenditure, in any one year, greater in amount than would accrue and be available for such purpose.” Under the first section this necessitous-levy is limited to two mills on the dollar, and is ordered to-cease when the necessity no longer' exists. Section four requires these levies to be certified to the county auditor, to-be placed, in consolidated form, upon the general tax duplicate, to be collected as other taxes. These levies, when collected, were to be paid to the treasurer of the board of education; but, by reason of the requirements of section 67 of the common school act of 1853, no order was authorized to be drawn in favor of such treasurer until certain. *44 requirements of the school officers of all special school districts have been complied with.
Counsel for plaintiff claim that section seven of the Akron school statute was in force in Toledo at the date of the .alleged injury, “ making defendant a corporation full and •complete, and gives it full control of the corporate funds, including those raised to defray all the expenses of said ■school system.” This claim is not founded on the true condition of the law.
The original section seven of the Akron school law re•quired the Akron school board to report to the town council of Akron “ the amount of money necessary to be raised in addition to the money accruing to 'said town under the general school laws of the state, to defray all other expenses of said school system during the current year.” Upon receiving this report from the Akron board of education, the town council was required to make the necessary levy, etc. The act of January 28,1841 (Ohio L. 1862, p. 33), .amended the original Akron statute. Sec. 1 limits the levy of the tax to be thereafter “ assessed to defray the expenses •of the school system ” to four mills, in any one year, on the “ dollar of the taxabl e property ” in the town of Akron. Section three requires the “ board of education to make known to the auditor of the county of Summit, the amount of tax which they may want levied for school purposes during the current year,” etc. Section four repeals so much of the amended act as is in conflict with this repealing act.
From this it appears that the city of Akron and the city ■of Toledo each have a statute governing and controlling the action of their respective boards of education, touching the levy of tax assessments, the amount of the levy, and the purpose thereof. Whatever may be the liability of the corporation, known as the board of education of Akron, for negligence under statutes affecting it, we are quite certain that section seven of the Akron school law in no way affects the power or liability of the board of education of the ■city of Toledo.
The board of education of Toledo is a corporation to a *45 qualified extent, capable of contracting and being contracted with, within the limits of the express grants of power given to it, or arising to it, by necessary implication; it may sue and be sued to enforce its contracts, and be compelled, by legal process, to comply with all its legal obligations. It is a corporation of a public nature, and charged with the performance of public duties. By the second section of the Akron act, it is “ authorized to receive all moneys accruing to said town, or any part thereof, for the use and benefit of the common schools in Toledo.” It is-also made capable of receiving any gift, grant, donation,, or devise made for the use of the common schools of the-city.
Section eight provides, that “all legal titles” to lands- and houses and other property used for common school purposes in Akron (Toledo), shall vest in the town council of Akron (Toledo), at the taking effect of this act, and all-titles acquired thereafter shall be in the name of the town council, with power to sell, lease, and convey any and all the lands, etc., and to purchase other lands and tenements, etc., by and with the advice of the board of education, but not otherwise. This gives tbe city council possession of,., and control over, all the school property belonging to the school district. The board of education has no legal control or power over such property: it can veto the action of' the city council when it does not approve. It has no other-property right.
It is provided in sec. 43, act of 1853 (S. & C. 1361), that the school-house lot, not exceeding four acres, appropriated to common school purposes, upon which a schoolhouse has been erected, and is occupied for the accommodation of a common school of any grade, in the usual manner, from time to time, by whomsoever the legal title may be held or vested, is exempted from sale on execution.. Neither courts, boards, nor town councils, can subject such school property to the payment of damages resulting to a. private person from the negligence of defendant.
We have wholly failed to find any provision of the school» *46 law, general or special, creating or implying the liability of defendant in this class of cases. No possible means appears, in the school laws, by which defendant, if liable for a tort, eonld provide a fund out of which to satisfy a judgment against it.
An examination of the nature and power of such quasi corporations, will furnish a reason sufficient why defendant is not liable.
Text writers say: “ Civil corporations are of different grades or classes, but in essence and nature’ they must all be regarded as public. The school district, or road district, is invested with a corporate character, the better to perform, within and for the locality, its special function, which is indicated by its name. It is but an instrumentality of the -state, and the state incorporates it, that it may the more -effectually discharge its appropriate duty; so with counties.” 1 Dillon on Municipal Corporations, sec. 10.
City and village school districts constitute a part of the •state policy in promoting and fostering common schools, and have become state agencies in the school system of education contemplated in the constitution. The laws cre.ating them, or authorizing such organizations prior to the adoption of the present constitution, are continued in force by the statute of March 14, 1858, and retain, in this way, their authority, and incur the liabilities to which they are subjected. Owing to the very limited number of corporate powers conferred on them, boards of education rank low in the grade of corporate existence, and hence are properly denominated quasi corporations. This designation distinguishes this grade of corporations from municipal corporations, such as cities and towns acting under charters or incorporating statutes, which are vested with more extended powers and a larger measure of corporate life. This superior grade, from the nature of tlieir organization, benefits received, and power to raise needed funds, are held responsible, by the common law, for private personal injuries caused by their own negligence or that of their servants, whilst the inferior grade of public quasi corporations are *47 liable for damages resulting from their negligence, only where made so by express legislation. This grade includes the defendant. It possesses but limited powers and small •corporate life. A corporation in some sense political, but in no sense a municipal corporation.
The duty defendant owes the municipal corporation of the city of Toledo is a public and not a private duty. The fund that it is authorized to levy upon the property -of the school district is a trust fund, devoted by law to -educational purposes only. It can order an assessment within certain boundaries, as one of the public agencies of the state for the maintenance of public schools within that limit, which assessment can not be lawfully directed to ■any other use.
Whether we consider the language of the statutes affecting this question of liability of defendant, applying to them the rules of construction indicated by the very narrow range of objects and purposes in the organization of defendant as a corporation, or looking to the general policy •of our state common school system, we are of opinion, no action, sounding in tort, was ever contemplated.
Having already concluded that defendant, as a quasi corporation, is a public agent employed in administering the common school systerp of this state, there is no principle of common law, by which this action can be supported. On this point the principle settled in the case of “the Board of Commissioners of Hamilton County v. J. W. Mighels,” 7 Ohio St. 109, fully exonerates the defendant as a quasi corporation from common law liability. That •case and the principle settled in it, are fully supported by numerous English and American cases.
To show a disposition in the highest English courts to enlarge the liabilities of corporations, counsel for plaintiff cite the cases of Mersey Docks v. Gibbs and Mersey Docks v. Price, 11 House of Lords Cases, 686. We do not perceive such tendency in these cases. The docks were placed in charge of a body of trustees, with power to collect tolls for their use to and close them for cleansing and repair. By statute of *48 51 Geo. III. they were clothed with power to appoint water-bailiffs to remove wrecks and other obstructions, to pay for-this out of dock rates collected from vessels. A bank of mud was allowed to accumulate in the approach to the docks. The “ Sierra Nevada,” in attempting to reach the docks with a cargo of guano, foundered in the accumulated mud,, so that the water and mud entered the vessel and damaged the cargo. The Docks was a corporation, created by statute, and the surplus funds collected went to public uses.. Suits in these cases were brought to recover damages for negligence. The House of Lords held the corporation liable, and directed that the liability thus incurred should be discharged from rates received from vessels, and from which fund dock repairs were paid. This ruling was in harmony with the general doctrine; first, because it was the-duty of that corporation to keep the docks in repair out of the tolls, and second, because, keeping the approaches, to the docks navigable was necessary to the proper use of the docks and due to customs.
To maintain plaintiff’s action, her counsel confessedly rely mainly on the case of Pease v. The City of Dayton, 4 Ohio St. 80. The cases are not alike in fact or principle.. That was an action against a strictly municipal corporation for injuries to a third person, resulting from the negligence of subordinate officers acting under the authority of the municipal corporation, in which case was applied the maxim of respondeat superior, etc. Dayton was incorporated for the immediate benefit of its inhabitants, with considerable legislative power, directing a municipal government for its own pleasure, benefit and emolument, with power to provide a fund to meet and satisfy damages for its own wrongs, or injuries, arising from the negligence of its servants. This defendant is but a quasi corporation of inferior grade, acting for the public as one of the state’s ministerial educational agencies, with power to levy taxes for school and school building purposes, and no other. It was a public school agent in the city of Toledo in the same- *49 sense that a township hoard of education is a public school agent in a township.
The ease of Biglow v. Inhabitants of Randolph, 14 Gray 541, is in point, The town of Randolph, by a vote, assumed the duties of school districts, purchased a lot and erected thereon a school house for the schools of the town. An excavation about eight feet deep was made in the lot with the knowledge of defendants, and remained so-for about eighteen months prior to the alleged injury. Plaintiff was a pupil of one of the schools, and while at-play on the lot with her school companions, without fault on her part, fell into the excavation and was injured. This-suit was brought to recover damages for the alleged injury resulting from the negligence of defendants in the matter of the excavation on the school lot. ' Defendants’ legal liability was the question involved. The court held, that “ a town which has assumed the duties of school districts is not liable for an injury sustained by a scholar attending-the public school from a dangerous excavation in the school house yard owing to the negligence of the town officers.”
In his opinion, Metcalfe, J., said: “ The question then is whether the defendants are answerable on the facts in this case, for the special injury sustained' by the plaintiff through their neglect to provide a safe place for her attendance at school. "We are of opinion that they are not. The wrong which the facts show was not malfeasance, but' mere neglect of that kind of corporate duty for neglect of ■which, as we have seen, a town is liable, to a private action-only when it is given by statute.”
"We add, the demurrer admits facts which show mere neglect of that kind of corporate duty for neglect of which boards of education are liable to a private action only when it is expressly given by statute.
Judgment of the Court of Common Pleas is affirmed,, and the cause remanded to that court for execution.